## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

CHAMBERS OF
**MADELINE COX ARLEO**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
ROOM 2060
NEWARK, NJ 07101
973-297-4903

## LETTER OPINION & ORDER

May 29, 2015

To:  WILLIAM C. MARTUCCI
     3 DUNDAR ROAD
     SPRINGFIELD, NJ  07081

     PAUL KAPISH
     MONZO CATANESE PC
     211 SOUTH MAIN STREET
     SUITE 104
     CAPE MAY COURT HOUSE, NJ  08210

     **Re:   William C. Martucci v. John F. Vitale, et al.**
            **Civ. Action No. 14-6311**

Dear Parties:

This matter comes before the Court on Defendants' motion to dismiss Plaintiff William Martucci's ("Martucci") Complaint.  For the reasons set forth below, Defendants' motion is **GRANTED**.  Specifically, all of Martucci's claims except for his claims under Section 9(a) and Section 10(b) of the Securities Exchange Act are dismissed with prejudice and his Section 9(a) and Section 10(b) claims are dismissed without prejudice.  Martucci shall be provided until **June 29, 2015**, to file an amended complaint, and Martucci's failure to file an amended complaint by that date shall result in the Complaint being dismissed with prejudice.

## I.   BACKGROUND

This matter is at least the third litigation between Plaintiff William C. Martucci ("Martucci") and various members of the Vitale family and the corporations they control.  All

of these litigations involve a series of business transactions, or potential business transactions, between Martucci and the Vitale family.

First, in 2008, John Vitale, Jr. ("John Jr."), Vital Cash, LLC, Vital Consultants, LLC, Electronic Currency Systems, Inc., and The Money Network, Inc., brought suit against Martucci and other defendants in New Jersey Superior Court (the "2008 Litigation"). See Ex. A to Vitale Aff. Specifically, these plaintiffs alleged that in 2007, John Jr., who was engaged in the ATM business, and Martucci went into business with each other. Id. ¶ 1. During their conversations, Martucci proposed using a publically traded "shell" company named "Smart Money, Inc." to fuel growth, merging the various Vitale family corporations into this public shell, and John Jr. becoming the president of the company's ATM division. Id. ¶¶ 2, 3. Based upon these representations, John Jr. raised approximately $433,000 for investment and agreed to rout all of Vital Cash's, Vital Consultants', and Electronic Currency Systems' revenues into The Money Network, Inc., a newly formed corporation, and transferred all of his companies' bank accounts to another bank. Id. ¶¶ 4, 7. Eventually, John Jr. and the other investors were issued stock certificates, not for Smart Money, but instead for a public company named "Aampro Group, Inc." Id. ¶ 6. In fall 2007, John Jr. discovered $760,000 had been withdrawn from corporate bank accounts without his knowledge or consent and Martucci had been impersonating him. Id. ¶¶ 10-15.

Following a jury trial in which Martucci represented himself *pro se*, a final judgement was entered in favor of The Money Network and against Martucci for $578,652.54 for misappropriation of assets. See Ex. B to Vitale Aff. The jury found that: (1) Martucci lacked actual or apparent authority to sign checks or withdraw funds from The Money Network's account; (2) Martucci misappropriated funds withdrawn from The Money Network's account; (3) the total amount of the misappropriation was $254,180.89; (4) the assessment of $300,000

2

in punitive damages against Martucci was appropriate. Id. This final judgment was not appealed, vacated, or modified.

In 2012, Martucci filed suit against all of the plaintiffs in the 2008 Litigation, as well as John Vitale, Sr. ("John Sr."), Christopher Vitale, Nina Vitale, Steve Orlando, Michael Orlando, Telos Partnerships, LLC, and Brothers ATM (the "2012 Litigation"). See Ex. C to Vitale Aff. The claims in that case also stem from the same failed business transactions at issue in the 2008 Litigation. Id. In short, Martucci alleged John Jr. broke his promise to merge The Money Network, Vital Consultants, and Electronic Currency Systems into Aampro and John Jr. mismanaged Aampro and allowed the company to be used as the Vitale family's "piggy bank." Id.

The Superior Court dismissed the action, finding all of Martucci's claims were barred by New Jersey's Entire Controversy Doctrine:

> Under the circumstances I will dismiss Mr. Martucci's action with prejudice finding that it is barred both the entire controversy [doctrine] as set forth in Rule 4:30-A and also by res judicata there having been a judgment in a prior suit involving parties that were either identical or in privity that was - - that grew out of the same transaction or occurrence as the present claim. And in reaching that claims I will rely on [Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991)].

See Ex. D to Vitale Aff. at 8:15-25. The Appellate Division affirmed the dismissal. See Ex. E to Vitale Aff.

Martucci has now filed suit, *pro se*, in federal court against John Sr., John Jr., Nina Vitale, Christopher Vitale, Vital Cash, Vital Consultants, Electronic Currency Systems, The Money Network, and Telos Partnerships (collectively, "Defendants"). All of the Defendants were defendants in the 2012 Litigation and most were also plaintiffs in the 2008 Litigation. Although his legal theories are unclear from the face of the Complaint, it is apparent that the factual basis for this suit is same business transactions that were at issue in the 2008 and 2012

3

Litigations. Again, Martucci alleges that John Jr. promised to, but did not, merge The Money Network, Vital Consultants and Vital Cash into Aampro. Id. ¶¶ 26-27. Additionally, Martucci claims Aampro was mismanaged and the Vitale family used the company to pay their personal debts. Id. ¶¶ 31-63. The Complaint ends with a recitation of statues, codes, and other regulations that Defendants' conduct allegedly violated: (1) Sections 11 and 12 of the Securities Act; (2) 18 U.S.C. § 1341; (3) 18 U.S.C. § 1956; (4) 17 C.F.R. § 240.10b-5; (5) U.C.C. § 2-207(1); (6) SEC Regulation G; (7) SEC Rule 144; (8) "the Securities and Exchange Commission Act of 1934, Pump and Dump and artificially inflating stock prices"; (9) Sarbanes Oxley; and (10) 18 U.S.C. § 1961(5). Id. ¶¶ 64-72.

## II.   APPLICABLE LAW

Defendants have moved to dismiss the Complaint on various preclusion theories. For the reasons set forth below, all of Martucci's claims except for his claims under Section 9(a) and Section 10(b) of the Securities Exchange Act are dismissed with prejudice as barred by the Entire Controversy Doctrine and his Section 9(a) and Section 10(b) claims are dismissed without prejudice.

### A.   New Jersey Law Applies to the Dispute

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "give the same preclusive effect to a state-court judgment as another court of that State would give.'" Opdycke v. Stout, 233 F. App'x 125, 128 (3d Cir. 2007) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)). Thus, New Jersey's preclusion rules govern whether Martucci's current claims are barred. Id.[1]

---

[1] Thus, to the extent that Defendants seek to have the Court apply federal *res judicata* principles to the instant dispute, that request is denied. Additionally, to the extent Defendants argue that the doctrine of collateral estoppel applies, Defendants have failed to demonstrate that

### B. Standard for Summary Judgment

The Entire Controversy Doctrine is an affirmative defense. Ricketti v. Barry, 775 F.3d 611, 613 (3d Cir. 2015). Thus, unless its elements appear on the face of the complaint, the doctrine is not a basis for dismissal under Rule 12(b)(6). Rycoline Prods. Inc., v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997). If the elements of the defense are not apparent on the complaint's face, the district court may convert the motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). Ricketti v. Barry, No. 13-6804, 2015 WL 1013547, at *2 (D.N.J. Mar. 9, 2015). Here, because Defendants relied on prior pleadings, verdict forms, and court opinions from the 2008 and 2012 Litigations, the Court converted the motion into a motion for summary judgment and provided the parties with a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Neither Martucci nor Defendants filed any supplemental submissions.

Summary judgment should be granted if "the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). And a dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

### C. The Entire Controversy Doctrine

The Third Circuit has described the Entire Controversy Doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." Ricketti, 775 F.3d

---

doctrine's applicability. See Sacharow v. Sacharow, 177 N.J. 62, 76 (2003).

at 613 (quoting Rycoline, 109 F.3d at 886).   This doctrine "encapsulates the state's longstanding policy judgment that 'the adjudication of a legal controversy should occur in one litigation in only one court.'"  Id. (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 14 (1989)).

 The Entire Controversy Doctrine "requires that a person assert in one action all related claims against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party." Wisniewski v. Travelers Cas. & Sur. Co., 390 F. App'x 153, 156 (3d Cir. 2010) (quoting In re Mullarkey, 536 F.3d 215, 229 (3d Cir. 2008)); see also Chrystal v. N.J. Dept. of Law & Public Safety, 535 F. App'x 120, 123 (3d Cir. 2013) ("In New Jersey, the entire controversy doctrine 'is an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit.'") (quoting Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 135 (3d Cir. 1999)). This doctrine applies both to a plaintiff's affirmative claims and to any crossclaims or counterclaims that could have been raised by a defendant.  Chrystal, 535 F. App'x at 123; Tagayun v. Citibank, N.A., No. 05-4302, 2006 WL 5100512, at *6 (D.N.J. June 9, 2006). Furthermore, the doctrine applies not only to actual or potential claims between the parties in the first suit, but also "extends to all those in privity with the parties involved in the preceding litigation." Wisniewski, 390 F. App'x at 156 (citing McNeil v. Legislative Apportionment Comm'n, 177 N.J. 364, 396 (2003)).  If a party fails to assert any such affirmative claim, that party is precluded from bringing the claim in a subsequent suit.  N.J. Ct. R. 4:30A.

 Thus, under New Jersey law, the Entire Controversy Doctrine applies when:

> (1) the judgment in the prior action [is] valid, final, and on the merits; (2) the parties in the later action [are] identical to or in privity with those in the prior action; and (3) the claim in the later action [] grow[s] out of the same transaction or occurrence as the claim in the earlier one.

McNeil, 177 N.J. at 395 (quoting Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991)).

The Entire Controversy Doctrine applies to only the claims that could have been raised in New Jersey state court; therefore, it does not apply to causes of action for which the federal courts have exclusive jurisdiction.  See Research & Trading Corp. v. Safety Tech. Sys., Inc., No. 93-2362, 1994 WL 114553, at *6 (D.N.J. Mar. 29, 1994); see also Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot., 725 F.3d 369, 394 (3d Cir. 2013).

### III.  APPLICATION TO THE 2008 LITIGATION

In the 2008 Litigation, John Jr., Vital Cash, Vital Consultants, Electronic Currency Systems, Inc., and The Money Network brought suit against several defendants, including Martucci.  See Ex. A to Vitale Aff.  Following a jury trial, a final judgment was entered for The Money Network and against Martucci for $578,652.54.  See Ex. B to Vitale Aff.  Thus, the first element of the Entire Controversy Doctrine, the existence of a final judgment, is clearly satisfied.

Next, the Court finds that the claims in this case "grow out of the same transaction or occurrence" as the 2008 Litigation.  See McNeil, 177 N.J. at 395; Bey v. Port Auth. Police of N.Y. & N.J., No. 13-1399, 2014 WL 4105410, at *1 (D.N.J. Aug. 19, 2014) (stating the Entire Controversy Doctrine applies to "all claims known" to the parties in the first suit that "stem from the same transactional facts.") (quoting Joel v. Morrocco, 147 N.J. 546, 548 (1997)); D. Russo, Inc. v. Chiesa, No. 12-2397, 2013 WL 2149681, at *6 (D.N.J. May 16, 2013) ("The issue is, basically, whether a sufficient commonality of facts undergirds each set of claims to constitute essentially a single controversy that should be the subject of only one litigation.") (quoting DiTrolio v. Antiles, 142 N.J. 253, 258 (1995)).  As detailed above, the 2008 Litigation involved the business relationship between Martucci and the Vitale family.  The 2008

7

Litigation's complaint included allegations involving the use of Aampro as a publically traded shell, the rebranding of the Aampro, the potential merger of Vitale family corporations into the public shell, John Jr.'s successful attempts to raise capital for the company, the issuance of Aampro stock certificates to investors, the division of responsibility and ownership of the various companies, the cause of the financial shortfall, and various SEC filings. See Ex. A to Vitale Aff.

The same business dealings form the basis of the Verified Complaint in this case. All of Martucci's causes of action involve the proposed merger of the Vitale corporations into the public shell, John Jr.'s efforts to raise capital, the issuance of Aampro shares to these investors, the management of the various corporations, the financial shortfall, and various SEC filings (or lack thereof). See generally Compl. Thus, because all of Martucci's claims in this case grow out of transactions at issue in the 2008 Litigation, the Court finds that the Entire Controversy's third element is satisfied.

Finally, the Court is satisfied that Defendants were parties in, or in privity with parties to, the 2008 Litigation. Specifically, this elements is satisfied as to John Jr., Vital Cash, Vital Consultants, Electronic Currency Systems, Inc., and The Money Network as they were all plaintiffs in the 2008 Litigation. As to John Sr., Nina Vitale, Christopher Vitale, and Telos Partnership, the Court finds that, under New Jersey law, they are in privity with parties to the 2008 Litigation.

In comparison to federal preclusion principles, New Jersey has adopted a broader definition of "privity." See Opdycke v. Stout, 233 F. App'x 125, 129 n.6 (3d Cir. 2007). "In New Jersey, privity is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." Hamburg Music Corp. v. Winter, No. 04-2738, 2005 WL 2170010, at *3 (3d Cir. Sept. 8,

2005) (citation and quotation omitted). Furthermore, New Jersey courts are more likely to find "privity" when a party to the first litigation attempts an end-run around the entire controversy doctrine by either bringing suit under a different name or naming related entities as defendants. See Hamburg Music, 2005 WL 2170010, at *3 ("Moreover, New Jersey courts are more willing to find that parties are in privity if the plaintiff had a full and fair opportunity to litigate its claims in the first action."); Radovich v. YA Global Investments, L.P., No. 12-6723, 2013 WL 4012042, at *5 (D.N.J. Aug. 5, 2013) (dismissing suit by shareholder-plaintiff and two corporations he controlled when prior suit was brought by a corporation of which the shareholder-plaintiff was majority shareholder); Andriani v. City of Hoboken, No. 11-6707, 2012 WL 4442664, at *4 (D.N.J. Sept. 24, 2012) (Entire Controversy Doctrine applied to police officer Andriani's suit against the municipality, its police department, its police chief, its mayor, and a police captain because all were in privity with other police officers who had previously brought suit against Andriani); Tagayun v. Citibank, N.A., No. 05-4302, 2006 WL 5100512, at *1 (D.N.J. June 9, 2006) (holding attorney to party in the first suit was in privity with that party); see also Zahl v. Warhaftig, No. 13-1345, 2015 WL 1197095, at *5-6 (D.N.J. Mar. 16, 2015); Rodsan v. Borough of Tenafly, No. 10-1923, 2011 WL 2621016, at *13-14 (D.N.J. June 30, 2011).

Here, all of the corporate defendants are owned by members of the Vitale family. Compl. ¶ 19. Martucci claims that Vital Cash, Vital Consultants, and The Money Network (all plaintiffs in the 2008 Litigation) were controlled by "[John Jr.], [John Sr.], Christopher Vitale and Nina Vitale," that the Vitale family ignored corporate forms, and drained these companies' assets to pay the family's personal debts. Id. ¶¶ 28, 44, 46, 51-55. Furthermore, even if a specific family member is not mentioned in a cause of action, Martucci nonetheless seeks relief from "[John Jr.], [John Sr.], Christopher Vitale and Nina Vitale" in the prayer for relief at the

9

end of each cause of action and in the end of his Complaint. Id. ¶¶ 29, 34, 38, 42, 47, 56, 62, 75. In fact, Martucci does not seek any compensation from the Vitale family corporations. Thus, based upon Martucci's own allegations, the Court is satisfied that John Sr., Nina Vitale, Christopher Vitale, and Telos Partnership are in privity with John Jr., Vital Cash, Vital Consultants, Electronic Currency Systems, Inc., and The Money Network.[2]

As noted above, the Entire Controversy Doctrine does not extend to claims that could not be brought in state court (i.e., claims for which federal courts possess exclusive jurisdiction). Thus, Martucci's state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, fraud, negligent misrepresentation, conversion, *uberrimae fidei*, negligence, fraudulent conveyance, breach of fiduciary duty, and the Uniform Commercial Code are barred by the Entire Controversy Doctrine. Furthermore, Martucci's federal RICO and Securities Act of 1933 claims are barred because state courts have concurrent jurisdiction over these claims. See Tafflin v. Levitt, 493 U.S. 455, 466-67 (1990) ("For all of the above reasons, we hold that state courts have concurrent jurisdiction to consider civil claims arising under RICO."); 15 U.S.C. § 77v (state and federal courts have concurrent jurisdiction over Securities Act of 1933 claims).

Martucci's claims under Sections 9(a)[3] and 10(b) of the Securities Exchange Act are not barred by the Entire Controversy Doctrine because federal courts have exclusive jurisdiction over claims brought under that Act. McCarter v. Mitcham, 883 F.2d 196, 201 (3d Cir. 1989). For the reasons set forth below, however, the Court finds that Martucci has failed to plead these

---

[2] The Court recognizes that if any Defendants were not "in privity" with the plaintiffs in 2008 Litigation, the Court's analysis would be instead governed by N.J. Ct. R. 4:5-1(b)(2). Here, however, because the Court finds that all Defendants were parties to the 2008 Litigation or in privity with those parties, Rule 4:30A, not Rule 4:5-1(b)(2), applies.

[3] The Court interprets Martucci's reference to "Pump and Dump" as invoking Section 9(a) of the Securities Exchange Act.

claims with the necessary specificity and thus dismisses the claims without prejudice.

A private plaintiff alleging violations of the Securities Exchange Act must satisfy a heighted pleading standard. Specifically, for allegations sounding in fraud, Rule 9(b) mandates that "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). Furthermore, the Private Securities Litigation Reform Act ("PSLRA") has established a heightened pleading requirement in securities fraud cases. See Cohen v. Stevanovich, 722 F. Supp. 2d 416, 428 (S.D.N.Y. 2010) (applying this standard to both Section 9(a) and Section 10(b) claims). The complaint must "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). As such, the "PSLRA alters the normal operation of inferences under Fed. R. Civ. P. 12(b)(6)" by requiring a strong inference of scienter. In re Digital Island Sec. Litig., 357 F.3d 322, 328 (3d Cir. 2004) (internal citations omitted). Therefore, a complaint survives a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007).

Here, Martucci does not come close to pleading with particularity the facts giving rise to any inference that a Defendant acted with the required state of mind under the PSLRA. See,

e.g., Compl. at ¶ 49 (referring to "fraudulent and knowingly false or misleading conduct" without describing any false statements made to Martucci).   While Martucci generally references allegedly false statements made by John Jr. and John Sr. to certain investors to induce them to buy Aampro shares, Martucci does not claim to have relied upon those statements. Id. ¶¶ 60-61.  Instead, Martucci claims to have been Aampro's original owner. See Ex. C to Vitale Aff. ¶ 7.  Because Martucci has failed to plead a claim under either Section 9(a) or Section 10(b), the Complaint is dismissed in its entirety.[4]

## IV. APPLICATION TO THE 2012 LITIGATION

Because the Superior Court's dismissal of the 2012 Litigation does not constitute a final adjudication on the merits, that dismissal does not trigger the Entire Controversy Doctrine.  See Dingler v. Yallof, No. L-065-12, 2013 WL 3184658, at *2 (N.J. App. Div. June 25, 2013) (Entire Controversy Doctrine didn't apply to third complaint when first complaint was dismissed for lack of prosecution and second complaint was dismissed, improperly, under Entire Controversy Doctrine); see also Casatelli v. Horizon Blue Cross Blue Shield of N.J., No. 09-6101, 2010 WL 3724526, at *3 (D.N.J. Sept. 13, 2010); cf. Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 347 (1995) (stating dismissal under Entire

---

[4] While Martucci references a number of other statutes, regulations, and rules in the Complaint, these either do not provide any private right of action or do not appear to have any relevance to the instant dispute.   See Fiero v. FINRA, 660 F.3d 569, 578 (2d Cir. 2011) (Section 19(b) addresses the governance of self-regulated entities); Int'l Fund Mgmt. S.A. v. Citigroup Inc., 822 F. Supp. 2d, 368, 388 (S.D.N.Y. 2011) (applying Misrepresentation Act to only European offerings); Deng v. 278 Gramercy Park Grp. LLC, No. 12-7803, 2014 WL 1016853, at *10 (S.D.N.Y. Mar. 14, 2014) (claim for violating Rule 506 limited to purchasers); Gideon Minerals U.S.A., Inc. v. JP Morgan Chase Bank, No. 02-10140, 2003 WL 21804850, at *1 (S.D.N.Y. Aug. 6, 2003) (recognizing Sarbanes Oxley created only two private causes of action: (1) 15 U.S.C. § 7244, "Insider trades during pension fund blackout periods" and (2) 18 U.S.C. § 1514A, whistleblower protection for employees of publically traded companies); Muessing v. Nozko, No. 77-72, 1980 WL 340259, at *1 (D. Conn. Nov. 7, 1980) (Rule 144 does not create a private cause of action); Greene, et al., U.S. Reg. of Int'l Secs. & Derivative Markets 3-135 (11th ed.) (Regulation G does not modify the general anti-fraud provisions of Rule 10b-5).

12

Controversy Doctrine should be viewed as a threshold adjudication, not an adjudication on the merits).

## V. CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss is **GRANTED**. Specifically, all of Martucci's claims except for his claims under Section 9(a) and Section 10(b) of the Securities Exchange Act are dismissed with prejudice and his Section 9(a) and Section 10(b) claims are dismissed without prejudice. Martucci shall be provided until **June 29, 2015**, to file an amended complaint, and Martucci's failure to file an amendment complaint by that date shall result in the Complaint being dismissed with prejudice.

**SO ORDERED.**

HON. MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

13